UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRIT F. AUGBORNE, III,<br><br>    Plaintiff,<br><br>v.<br><br>FILSON, et al.,<br><br>    Defendants | Case No. 3:17-cv-00393-MMD-CBC<br><br>**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**[1] |

Before the Court is plaintiff Brit F. Augborne III's ("Augborne") First Amended Complaint ("FAC"). (ECF No. 20.) The Court now re-screens Augborne's FAC pursuant to 28 U.S.C. § 1915A.

**I.  SCREENING STANDARD**

Section 1915 provides, in relevant part, that "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard when reviewing the adequacy of a complaint under § 1915. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

Under Rule 12(b)(6), the court is to dismiss when the complaint fails to "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept as true all well-pled factual allegations, set aside legal conclusions, and verify

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. This action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

1

that the factual allegations state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although the complaint need not contain detailed factual allegations, it must offer more than "a formulaic recitation of the elements of a cause of action" and "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555.

Upon review, the complaint is construed in the light most favorable to the plaintiff. *Chubb Custom Ins. Co. v. Space Systems/Loral Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). The court takes particular care when reviewing the pleadings of a pro se plaintiff, as a more forgiving standard applies to litigants not represented by counsel. *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014). In addition, a pro se plaintiff must be given notice of the deficiencies of his or her complaint, and leave to amend, unless the opportunity to amend would be futile. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995). Despite this leniency, a district court may in its discretion dismiss an in forma pauperis complaint if the claim "lacks an arguable basis in either law or fact." Id. This includes claims based on untenable legal conclusions (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist) or fanciful factual allegations (e.g., fantastic or delusional scenarios). *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.     SCREENING OF COMPLAINT

### A.     Procedural History

Augborne is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at High Desert State Prison ("HDSP") in Indian Springs, Nevada, however the events giving rise to this complaint occurred at Ely State Prison ("ESP"). (ECF No. 20, at 3.) Augborne has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1-1.) On June 28, 2018, the Court screened Augborne's complaint and determined that the portion of Count I alleging excessive force against Stolkz and Hammond could proceed. (ECF No. 11.) The Court also determined that the portion of Count I alleging supervisory liability against Homan, Filson, and Dzurenda should be

dismissed; accordingly, they were dismissed without prejudice. (*Id.*)

On November 1, 2018, Augborne filed a First Amended Complaint ("FAC"). The FAC reiterates the previously permitted excessive force claims, however, the FAC also adds four more counts and eleven defendants. (ECF No. 20.) Defendant Michael Stolkz[2] requested that the court re-screen Augborne's FAC pursuant to 28 U.S.C. § 1915A prior to the litigation proceeding.

### B. Factual Background

In the FAC, Plaintiff sues multiple defendants for events that took place while Plaintiff was incarcerated at ESP. (ECF No. 20 at 2.) Specifically, Augborne sues Warden Filson, Officer Stolkz, Officer Homan, John Doe Associate Warden of Operations ("AWO,") and John Doe's number one (1) through ten (10) (collectively referred to as "Defendants"). (*Id.*) In addition to the excessive force claim, Augborne's FAC adds the following claims: (1) a First Amendment right to redress grievances claim; (2) a Fourteenth Amendment due process claim; (3) a Fourteenth Amendment equal protection claim; (4) an Eighth Amendment cruel and unusual punishment claim; (5) an Eighth Amendment deliberate indifference claim; (6) a First Amendment retaliation claim; (7) a conspiracy claim; and (8) a state law negligence claim. (*Id.*)

The pertinent facts in this case can be broken into two separate but related issues. (ECF No. 20.) The first involves a physical assault Augborne claims occurred when he initially arrived at ESP on September 12, 2016. (*Id.*) The second involves an underlying custom or practice allegedly promoted by various authority figures in the NDOC system to intimidate and impose fear upon inmates. (*Id.*)

### 1. Physical Assault

Plaintiff alleges that upon his arrival to ESP, Defendant Stolkz approached a black inmate in an aggressive manner in an attempt to inflict fear on inmates arriving at ESP. (*Id.*,

---

[2] May also be spelled Stolk.

- 3 -

at 3 – 5.) Defendant Stolkz grabbed the young, black inmate by his collar and asked him, "What the fuck is your name boy?" (*Id.*) The inmate looked at Augborne for direction and guidance, which caused Defendant Stolkz to direct his attention towards Augborne. (*Id.*)

Defendant Stolkz asked Plaintiff the same question and proceeded to remove Augborn's identification card from his pocket. (*Id.*) Augborne claims Defendant Stolkz told him "Your (sic) about to find out where your (sic) at real quick boy," and proceeded to grab Auborne by the shirt collar and drag him down the hallway. (*Id.*) Augborne's hands and feet were shackled with cuffs and chains. (*Id.*) Augborne told Defendant Stolkz, as he was being dragged, that he wanted an emergency grievance. (*Id.*) Defendant Stolkz took Augbornne into a holding cell where he flipped Plaintiff over his left leg by stepping in front of Plaintiff's shackled feet, causing Plaintiff to chip his front tooth and causing Plaintiff to be unable to defend himself after the fall. (*Id.*) Augborne claims Defendant Stolkz then began punching Plaintiff in the head and face and kicking Plaintiff's body while asking, "What the fuck is your name? Do you still want your grievance boy?" (*Id.*)

### 2. Policy and Custom of Intimidation of New Inmates

Augborne then claims that numerous other officers witnessed the attack, but did not intervene, nor did they report it. (*Id.*) Specifically, Augborne asserts that Homan and John Doe's number one (1) through ten (10) were present and witnessed Stolkz attacking a defenseless Augborne, without any justification, but failed to intervene or report the incident. (*Id.*) Dzurenda, Filson, and John Doe AWO are aware of correctional officers at ESP physically abusing problematic inmates to encourage compliance. (*Id.*) Dzurenda, Filson, and John Doe AWO did not take any actions to prevent such incidents from occurring, because they are promoting the practice of abusing inmates. (Id.) Homan, and John Doe's number one (1) through ten (10) are employees of NDOC and work under the direction of Dzurenda, Filson, and John Doe AWO. (*Id.*)

**III.    ANALYSIS**

Having reviewed the FAC, the Court construes it as alleging the following five causes of action:[3] (1) excessive force against Stolkz; (2) retaliation against Stolkz and Dzurenda; (3) conspiracy against Homan, and John Doe's number one (1) through ten (10); (4) failure to protect against Homan and John Doe's number one (1) through ten (10); and (5) supervisory liability against Dzurenda, Filson, and John Doe AWO. *See Liston v. Las Vegas Metro. Police Dep't*, 111 Nev. 1575, 1578, 908 P.2d 720, 723 (1995) ("[a] plaintiff who fails to use the precise legalese in describing his grievance but who sets forth the facts which support his complaint thus satisfies the requisites of notice pleading"); *State Farm Mut. Auto. Ins. Co. v. Wharton*, 88 Nev. 183, 186, 495 P.2d 359, 361 (1972) ("it is the nature of the grievance rather than the form of the pleadings that determines the character of the action" (quoting *Auto. Ins. Co. v. Union Oil Co. of Cal.*, 85 Cal. App. 2d 302, 306, 193 P.2d 48, 50 (1948)). The court addresses each of these claims in turn.

   **A.    COUNT I – OFFICER STOLKZ**

Augborne alleges two First Amendment claims, two Eighth Amendment claims,[4] and two Fourteenth Amendment claims against Stolkz. (ECF No. 20, at 6.) However, Augborne fails to provide facts to support his First Amendment right to redress grievances claim and both of his Fourteenth Amendment claims. (ECF No. 20.) Therefore, the Court construes the FAC as only alleging one First Amendment claim and one Eighth Amendment claim against Stolkz within Count I, as analyzed below. (ECF No. 20, at 6.)

---

[3] Although Augborne states five counts in his FAC alleging multiple violations within each count, the Court interprets these counts as causes of action. *See Saintal v. Pesce*, No. 215CV02460GMNNJK, 2018 WL 1567854, at *2 (D. Nev. Mar. 30, 2018) (construing multiple claims as counts).

[4] It is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims. *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 688–89 (9th Cir. 2007). Augborne alleges an Eighth Amendment cruel and unusual punishment claim, as well as an Eighth Amendment excessive force claim. Based on the allegations, these claims are virtually indistinguishable. Therefore, the Court will only address Augborne's Eighth Amendment excessive force claim.

### 1. First Amendment – Retaliation

First, Augborne alleges Stolkz violated his First Amendment right to be free from retaliation. (ECF No. 20, at 6.) Specifically, Augborne claims that when he requested to file a grievance with Stolkz, Stolkz attacked him and "asked if [he] still wanted that grievance." (Id.) Furthermore, Augborne claims that Stolkz did so in an attempt to prevent him from exercising his right to redress the court. (Id.)

"Retaliation against prisoners for their exercise of [their right to file grievances] is itself a constitutional violation, and prohibited as a, matter of 'clearly established law.'" *Brodheim v. Cry,* 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes v. Robinson,* 408 F.3d 559, 567 (9th Cir. 2005) and *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995)). There are five basic elements for a viable claim of First Amendment retaliation in the prison context:

> An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoners' protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Brodheim*, 584 F.3d at 1269 (quoting *Rhodes*, 408 F.3d at 567-68).

The Court finds that Augborne states a colorable First Amendment retaliation claim. Based on the allegations, Stolkz struck Augborne repeatedly after Augborne requested to file a grievance against Stolkz. (ECF No. 20, at 6.) While beating Augborne, Stolkz revealed his motives as he asked Augborne if he "still wanted that grievance." (*Id.*) Such a statement coupled, with the physical violence could be interpreted as intending to prevent Augborne from filing the grievance. For screening purposes, this is sufficient to state a colorable First Amendment retaliation claim.

### 2. Eighth Amendment – Excessive Force

Augborne also alleges an Eighth Amendment excessive force claim against Stolkz within Count I. (ECF No. 20, at 6.) Specifically, Augborne alleges he was punched in the face, thrown on the ground, and had his teeth chipped by Stolkz. (*Id.*) Further, Augborne

claims that he was handcuffed and shackled without a legitimate penological purpose. (*Id.*) When an inmate alleges an Eighth Amendment violation for excessive force, the core inquiry is whether the force was applied in a good faith effort to maintain or restore discipline or was done maliciously and sadistically. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). In making this determination, the court may consider such factors as the extent of the injury suffered by the inmate, the need for the application of force, the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of the response. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). These factors may suggest "whether the use of force could plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.* Courts must give deference to prison officials when reviewing security measures taken in particular incidents, and cannot substitute their own judgment for that of officials. *Whitley v. Albers*, 475 U.S. 312, 322, 106 S. Ct. 1078, 1085, 89 L. Ed. 2d 251 (1986). However, while deference must be given when reviewing prison security measures, such deference does not "insulate from review actions taken in bad faith and for no legitimate purpose." *Id.*

The Court finds that Augborne states a colorable Eighth Amendment excessive force claim against Stolkz. Based on the allegations, Augborne was restrained by the hands and ankles and had not done anything to justify the use of force against him. (ECF No. 20, at 4 – 5.) Further, Stolkz's use of force against Augborne resulted in a broken tooth, as well as swelling and bruising. (*Id.*) For screening purposes, this is sufficient to state a colorable Eighth Amendment excessive force claim against Stolkz. Thus, under Count I, Augborne's First Amendment retaliation claim and Eighth Amendment excessive force claim will proceed against Stolkz.

## B. COUNT II – HOMAN AND JOHN DOE'S 1 – 10[5]

Next, under Count II Augborne appears to allege a conspiracy claim, one Eighth Amendment claim, and two Fourteenth Amendment claims against Homan and John Doe's number one (1) through ten (10). (ECF No. 20, at 7.) However, Augborne fails to provide facts to support either of his Fourteenth Amendment claims against Homan and John Doe's number one (1) through ten (10). (*Id.*) Therefore, the Court construes Count II as alleging a conspiracy claim coupled with an Eighth Amendment claim against Homan and John Doe's number one (1) through ten (10). (ECF No. 20, at 7.)

### 1. Conspiracy

First, in Count II Augborne alleges a conspiracy claim against Homan and John Doe's number one (1) through ten (10). (ECF No. 20, at 7.) Specifically, Augborne claims that Homan and John Doe's number one (1) through ten (10) are involved in a conspiracy to intimidate new arrivals at ESP. (*Id.*, at 4 – 5.) According to Augborne, Homan and John Doe's number one (1) through ten (10) witnessed Stolkz beating Augborne but stood by and did nothing to stop the attack, nor did any of them report the incident after the fact. (*Id.*) Homan and John Doe's number one (1) through ten (10) acquiesced in Stolkz's actions because there is an ongoing custom or practice of using physical violence to intimidate new arrivals at ESP. (*Id.*, at 3.)

"To state a claim for conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific acts to support the existence of the claimed conspiracy." *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989). The Plaintiff must show "an agreement or meeting of the minds to violate constitutional rights," and "[t]o be

---

[5] Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identity of any of the Doe Defendant(s) comes to light during discovery, Plaintiff may either move to substitute the true names of Doe Defendant(s) or move to amend his complaint to assert claims against the Doe Defendant(s) at that time.

liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must share at least the common objective of the conspiracy." *Crow v. Cnty. Of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010).

The Court finds that Augborne states a colorable conspiracy claim against Homan and John Doe's number one (1) through ten (10). Based on the allegations, Homan and John Doe's number one (1) through ten (10) acquiesced in Stolkz's actions by witnessing the attack, but doing nothing to stop it, and by failing to report it. (ECF No. 20, at 7.) They did so because there is a custom of using physical violence to intimidate new arrivals at ESP. (Id., at 3.) For screening purposes, this is sufficient to state a colorable conspiracy claim against Homan and John Doe's number one (1) through ten (10).

### 2.     Eighth Amendment – Duty to Protect

Augborne also alleges an Eighth Amendment duty to protect claim against Homan and John Doe's number one (1) through ten (10). (*Id.*, at 7.) Specifically, Augborne claims that Homan and John Doe's number one (1) through ten (10) failed in their duty to protect him by witnessing the assault but failing to intervene. (ECF No. 20, at 7.)

"Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982), abrogated on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferen[t]" to serious threats to the inmate's safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837. To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of

the risk may be sufficient to establish knowledge. *See Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

The Court finds that Augborne states a colorable Eighth Amendment duty to protect claim against Homan and John Doe's number one (1) through ten (10). Based on the allegations, Homan and John Doe's number one (1) through ten (10) witnessed Stolkz beating Augborne but failed to intervene or report the incident. (*Id.*) As support for his assertion that Homan and John Doe's number one (1) through ten (10) witnessed the attack, Augborne claims that the witnesses taunted him by repeating what they heard him cry while being beat by Stolkz. This is sufficient to state a colorable Eighth Amendment duty to protect claim. Augborne's Eighth Amendment duty to protect claim against Homan and John Doe's number one (1) through ten (10) will proceed. Thus, Augborne's conspiracy claim and Eighth Amendment duty to protect claim will proceed against Homan and John Doe's number one (1) through ten (10).

### C.   COUNT III – DIRECTOR DZURENDA

Next in Count III, Augborne alleges a First Amendment claim, two Eighth Amendment claims, two Fourteenth Amendment claims, a conspiracy claim, and a supervisory liability claim against Dzurenda. (ECF No. 20, at 8 – 9.) However, Augborne fails to provide facts to support both his Fourteenth Amendment claims, his Eighth Amendment claims, and his conspiracy claim. (ECF No. 20.) Therefore, the Court construes the FAC as only alleging one First Amendment claim, and one supervisory liability claim against Dzurenda, which will be addressed in turn. (ECF No. 20, at 8 – 9.)

#### 1.   First Amendment – Retaliation[6]

To the extent Count III alleges alleges a First Amendment retaliation claim against Dzurenda, this court finds that this claim fails. (ECF No. 20, at 8 – 9.) In this instance, Augborne claims that Dzurenda allows correctional officers at ESP to physically abuse

---

[6] *See* Section (A)(1)(a), which states the legal standard for First Amendment Retaliation.

inmates and that Dzurenda was somehow involved in Stolkz's attempt to dissuade Augborne from filing any further grievances. (*Id.*) However, the Court finds that Augborne entirely fails to mention how Dzurenda allegedly took adverse actions against him. (ECF No. 20.) Augborne thus fails to state a colorable First Amendment retaliation claim against Dzurenda, and this aspect of the claim is dismissed.

### 2. Supervisory Liability

Augborne also alleges a supervisory liability claim against Dzurenda. (ECF No. 20, at 8 – 9.) Specifically, Augborne claims that Dzurenda had a duty to properly train and supervise employees at ESP. (*Id.*) Augborne, however, claims that Dzurenda failed in this duty by allowing employees to physically abuse inmates. (*Id.*)

"Liability under [42 U.S.C. §] 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior. *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001). Thus, when a named defendant holds a supervisory position, the causal link between that defendant and the claimed constitutional violation must be established. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). To prevail on a theory of supervisory liability, the plaintiff must establish that the defendant either: "personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* (internal quotations omitted).

The Court finds that Augborne states a colorable supervisory liability claim against Dzurenda. Based on the allegations, Dzurenda had a duty to properly train and supervise employees at ESP, but he failed to do so. (ECF No. 20, at 8 – 9.) Dzurenda's alleged failure resulted in Augborne having his tooth chipped by Stolkz. *(Id.)* Further, Augborne claims that Dzurenda personally participated in his constitutional deprivation. (*Id.*) According to

Augborne, Dzurenda knew of the violations, and had the power to prevent them, but failed to act because Dzurenda was promoting and advancing such behavior. (*Id.*) For screening purposes, this is sufficient to state a colorable supervisory liability claim. Thus, with respect to Count III, Augborne's First Amendment retaliation claim against Dzurenda is dismissed, however, his supervisory liability claim against Dzurenda will proceed.

### D.  Count IV – Warden Filson

With respect to Count IV, Augborne alleges a First Amendment claim, two Eighth Amendment claims, a supervisory liability claim, and two Fourteenth Amendment claims against Filson. (ECF No. 20, at 10.) However, Augborne does not provide facts to support either his Fourteenth Amendment claims, his Eighth Amendment claims, or his First Amendment claim. (*Id.*) Therefore, the Court construes Augborne's FAC as only alleging a supervisory liability claim against Filson.

The court finds that, for purposes of screening, Augborne alleges a colorable supervisory liability claim against Filson. (ECF No. 20, at 10.) Specifically, Augborne claims that Filson acquiesced in Stolkz's actions because he was aware of the correctional officers assaulting inmates but did nothing to stop them. (*Id.*) Filson failed to act because there is a custom of correctional officer at ESP physically assaulting problematic inmates to encourage compliance. (*Id.*) Based on the allegations, Filson was aware that Stolkz and other correctional officers were abusing inmates because of multiple grievances and civil suits filed against the NDOC. (ECF No. 20, at 4 – 5.) Despite being in a position to stop this conduct, Filson allowed it to continue as is the custom at ESP. (ECF No. 20, at 4 – 5.) For screening purposes, this is sufficient to state a colorable supervisory liability claim. Thus, Augborne's supervisory liability claim against Filson will proceed.

### E.  COUNT V – JOHN DOE AWO

Pursuant to Count V, Augborne alleges a supervisory liability claim, and two Fourteenth Amendment claims against John Doe AWO. (ECF No. 20, at 11.) However, Augborne fails to provide facts to support either of his Fourteenth Amendment claims

against John Doe AWO. (*Id.*) Therefore, the Court construes Augborne's FAC as only alleging a supervisory liability claim against John Doe AWO.

Augborne claims that John Doe AWO has a duty to prevent correctional officers at ESP from abusing inmates, but he failed to uphold it. (*Id.*) Based on the allegations as stated in the FAC, the Court finds that Augborne states a colorable supervisory liability claim against John Doe AWO. Specifically, the FAC asserts that John Doe AWO had the power to prevent correctional officers from physically assaulting problematic inmates and was aware of this regularly occurring. (*Id.*) However, he chose not to act because there is a custom of allowing such behavior at ESP. (*Id.*) (ECF No. 20, at 4 – 5.) For screening purposes, this is sufficient to state a colorable supervisory liability claim. Thus, this claim will proceed against John Doe AWO.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that Count I proceed, in part, against Stolkz; Count II proceed, in part, against Homan and John Doe's number one (1) through ten (10) ; Count III be dismissed, in part, and proceed, in part, against Dzurenda; Count IV proceed, in part, against Filson; and, Count V proceed, in part, against John Doe AWO. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS RECOMMENDED** that Count I alleging violations of Augborne's First Amendment right against retaliation, and Eighth Amendment right against excessive force be allowed to proceed against Stolkz;

**IT IS FURTHER RECOMMENDED** that Count II alleging conspiracy and a violation of the Eighth Amendment duty to protect be allowed to proceed against Homan and John Doe's number one (1) through ten (10);

**IT IS FURTHER RECOMMENDED** that the portion of Count III alleging a First Amendment retaliation claim against Dzurenda be **DISMISSED** without prejudice, and the portion of Count III alleging supervisory liability be allowed to proceed against Dzurenda;

**IT IS FURTHER RECOMMENDED** that Count IV alleging supervisory liability, be allowed to proceed against Filson;

**IT IS FURTHER RECOMMENDED** that Count V alleging supervisory liability, be allowed to proceed against John Doe AWO.

DATED this 18th day of April 2019.

_____
UNITED STATES MAGISTRATE JUDGE