UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRIT F. AUGBORNE, III,<br><br>　　　　Plaintiff,<br><br>v.<br><br>FILSON, *et al.*,<br><br>　　　　Defendants. | 3:17-cv-00393-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff Brit F. Augborne, III ("Augborne"), against Defendants James Dzurenda ("Dzurenda") and Michael Stolk ("Stolk") (collectively referred to as "Defendants"). Currently pending before the court is Defendants' motion for summary judgment. (ECF Nos. 57, 59.) Augborne responded (ECF No. 62), and Defendants replied (ECF No. 64). Having thoroughly reviewed the record and papers, the court recommends Defendants' motion for summary judgment (ECF No. 57) be granted, in part, and denied, in part.

**I.　　BACKGROUND AND PROCEDURAL HISTORY**

Augborne is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at High Desert State Prison ("HDSP"). (ECF No. 20 at 1.) However, the events relevant to this case occurred at the Ely State Prison ("ESP"). (*Id.* at 3.) Proceeding *pro se*, Augborne submitted a civil rights complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1-1.) On November 1, 2018, Augborne filed his First Amended Complaint ("FAC"), which he signed and verified, under penalty of perjury, acknowledging that the facts and information contained in the FAC were "true and correct." (ECF No. 20 at 14). Pursuant to 28 U.S.C. § 1915A(a), the court screened the FAC on April 18, 2019.

---

[1]　This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

(ECF No. 27.) The court issued a Report and Recommendation, which the District Court adopted (*see* ECF No. 29), that allowed Augborne to proceed on Count I, alleging claims for First Amendment retaliation and Eighth Amendment excessive force against Defendant Stolk, and Count III asserting a supervisory liability claim against Defendant Dzurenda. (ECF No. 27.)[2]

**A. Undisputed Facts Common to Augborne's Claims**

The following facts are undisputed by both parties: On September 12, 2016, Augborne was transferred to ESP from HDSP. (ECF No. 57-2 at 9.) On November 22, 2016, Augborne filed an informal grievance alleging that Stolk had beaten Augborne upon Augborne's September 12 arrival at ESP, causing Augborne to chip his tooth. (*Id.* at 9-12.) The informal grievance, which was dated November 16, 2016, requested a remedy of "monetary damages for 10,000 or more." (*Id.* at 12.) NDOC responded that Augborne's grievance was forwarded to the Inspector General's Office for possible review on December 28, 2016. (*Id.* at 10.)

On January 17, 2017, Augborne filed a first level grievance, repeating the allegations in the informal grievance. (*Id.* at 5.) Once again, Augborne requested a remedy of "100,000." (*Id.* at 8). NDOC responded that Augborne's grievance "is partially granted as it has been forwarded to the Inspector General's Office for possible review." (*Id.* at 6.)

Finally, Augborne filed a second level grievance, repeating the allegations in the informal and first level grievances on March 21, 2017. (ECF No. 57-2 at 2). On April 25,

---

[2] Augborne also named Timothy Filson and Dennis Homan as defendants in his amended complaint. (*See* ECF No. 20.) However, the court dismissed those defendants, without prejudice, pursuant to stipulation. (*See* ECF Nos. 52, 53 and 51, 54, respectively.) Further, Augborne's first amended complaint stated Eighth Amendment and conspiracy claims against John Does one (1) through ten (10) and stated Fourteenth Amendment and supervisory liability claims against John Doe Associate Warden of Operations. (ECF No. 27 at 8-13.) Because Augborne has failed to identify the Doe Defendants, he appears to have abandoned those claims. (*See* ECF No. 55, setting the extended discovery deadline at January 27, 2020). Thus, the court recommends that claims against the Doe Defendants be dismissed from this action.

2

2017, NDOC responded that it had reviewed Augborne's prior grievances and had properly advised Augborne regarding the grievances. (*Id.* at 3.) In its response, NDOC denied Augborne's request for compensation. (*Id.*)

### B. Count I Excessive Force and Retaliation Claims against Stolk

Count I of the FAC alleges the following: Upon Augborne's arrival to ESP, Defendant Stolk approached a young, black inmate in an aggressive manner to instill fear in inmates newly arriving at ESP. (ECF No. 20 at 3-5.) Stolk grabbed the inmate by his collar and asked him, "What the fuck is your name boy?" (*Id.*) The inmate looked at Augborne for direction and guidance, which caused Stolk to focus his attention on Augborne. (*Id.*)

Stolk repeated the same question to Augborne and proceeded to remove Augborne's identification card from his pocket. (*Id.*) Stolk told Augborne "Your (sic) about to find out where your (sic) at real quick boy." (*Id.*) Stolk then grabbed Augborne by the shirt collar and dragged him down the hallway. (*Id.*) Augborne's hands and feet were shackled with cuffs and chains. (*Id.*) Augborne told Stolk, as he was being dragged, that he wanted an emergency grievance. (*Id.*) Stolk took Augborne aside into a holding cell where Stolk flipped Augborne over his left leg by stepping in front of Plaintiff's shackled feet, causing Plaintiff to chip his front tooth. (*Id.*) Augborne was unable to break his fall because his hands and feet were shackled. (*Id.*) Armed with leather gloves, Stolk proceeded to beat Augborne about the head and face area and kick him in the body while he lay on the ground shackled. (*Id.*) Despite having already ascertained Augborne's identity, Stolk repeatedly asked Augborne, "What the fuck is your name? Do you still want your grievance boy?" (*Id.*) Furthermore, Augborne claims that Stolk did so to prevent Augborne from exercising his right to redress the court. (*Id.*)

### C. Supervisory Liability Claim against Dzurenda

Count III of the FAC alleges that Dzurenda had a duty to properly train and supervise employees at ESP. (ECF No. 20, at 8-9.) However, Dzurenda failed in this duty by allowing employees to physically abuse inmates. (*Id.*) Dzurenda's failure resulted

3

in Augborne having his tooth chipped by Stolk. (*Id.*) Further, Dzurenda knew of the violations, and had the power to prevent them, but failed to act because Dzurenda was promoting and advancing such behavior. (*Id.*)

### D. Defendants' Motion for Summary Judgment

On December 16, 2019, Defendants Dzurenda and Stolk filed a motion for summary judgment (ECF Nos. 57, 59.) Defendants assert that they are entitled to summary judgment because no evidence exists that Stolk attacked Augborne on September 12, 2016, and alternatively, Defendants are entitled to qualified immunity. (*Id.*) Augborne opposed the motion, (ECF No. 62), and Defendants replied (ECF No. 64).

## II. LEGAL STANDARD

Summary judgment should be granted when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763

F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**III.   DISCUSSION**

    **A.   Count I – Excessive Force and Retaliation Claims**

Defendants argue they are entitled to summary judgment with respect to both aspects of Count I because there is no evidence that Stolk used any force against Augborne on September 12, 2016. (ECF No. 57 at 5-8.) In short, Defendants claim the events asserted by Augborne simply did not occur, and as a result, they are entitled to judgment as a matter of law. Defendants argue the only evidence Augborne has presented to establish these events occurred are his sworn statements, which Defendants characterize as "uncorroborated and self-serving." (*Id.* at 9) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)). Defendants argue such statements "do not give rise to a *genuine* issue of material fact" for purposes of summary judgment. (*Id.*) (emphasis in original). In fact, Defendants argue Augborne's allegations are "blatantly contradicted by the record, so that no jury could believe" them. (*Id.* at 6)

(citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

In opposition, Augborne counters by pointing to various items in the record and producing an affidavit from a witness to the events in order to establish there are issues of fact that preclude summary judgment. First, Augborne largely recounts the allegations of his verified complaint. (ECF No. 62 at 2-7.) Next, he points to his grievances regarding the incident, as well as the Inspector General's ("IG") Office investigation as evidence to corroborate his claims that the events September 12, 2016 did occur. (*Id.* at 2-3.)

Of particular significance, Augborne also produced a sworn affidavit from alleged eyewitness Troy Emanuel ("Emanuel"), attached to his opposition as "Exhibit A".[3] (*Id.* at 4, 10.) Emanuel states he witnessed Stolk drag Augborne away shortly after Emanuel and Augborne's arrival at ESP on September 12, 2016 and he observed facial bruising on Augborne in the housing unit hours later that same day. (*Id.* at 10.) Moreover, Emanuel describes Stolk's behavior as "very aggressive" and confrontational on September 12, 2016. (*Id.*) Emanuel claims Stolk grabbed and yanked Emanuel's shirt collar while shouting profanities at Emanuel. (*Id.*) Emanuel claims that Stolk similarly throttled Augborne before dragging him away. (*Id.*)

Finally, Augborne points to his medical kite, attached to his opposition as "Exhibit B", that is dated November 18, 2016 that shows he was seeking mental health treatment for the lasting mental effects from the trauma he suffered as a result of Stolk's alleged beating. (*Id.* at 5-6, 9.) In this medical kite, Augborne claimed "My head herts (sic) and I wake up fighting in my sleep from being attacked and in fights. And my head shakes uncontrollably I need to talk to someone." (*Id.*) NDOC responded on November 21, 2016 that a staff member would "stop bye (sic) cell front." (*Id.*)

In reply, Defendants attempt to discredit the evidence Augborne submitted, in

---

[3] According to Augborne and Emanuel, Emanuel is the young, black male initially accosted by Stolk. (*See* ECF. No. 62 at 10.) Emanuel allegedly arrived at ESP on the same day as Augborne and later, by happenstance, became Augborne's cellmate. (*See id.* at 4.)

6

effect, requesting the court to discount the evidence or not give weight to the evidence for any number of reasons. For example, Defendants argue Augborne's medical kite requests mental, rather than physical health treatment, indicating that Augborne was not seeking help for physical injuries. (ECF No. 64 at 4.) Defendants also claim Emanuel's affidavit does not demonstrate personal knowledge of how Augborne incurred the "perceived" facial bruising Emanuel allegedly observed on Augborne. (*Id.*) Defendants also reiterate their prior arguments that Augborne's allegations remain "blatantly contradicted by the record, so that no reasonable jury could believe" them, (*Id.* at 7) (citing *Scott*, 550 U.S. at 380), and that Augborne's claims remain "self-serving and unsubstantiated," (*Id.*) (citing *Villiarimo*, 281 F.3d at 1061) and "uncorroborated and self-serving." (*Id.* at 9) (citing *British Airway Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978).

Based on the evidence before the court, and in viewing all facts and drawing all inferences in the light most favorable to Augborne, the court finds that summary judgment must be denied with respect to Count I for several reasons.

First, Defendants fail to meet their initial burden in moving for summary judgment to demonstrate that a reasonable juror could not find for Augborne. *Celotex*, 477 U.S. at 323. Defendants are thus unable to overcome the initial step in the summary judgment burden-shifting framework. *See In re Oracle Corp.*, 627 F.3d at 387.

Contrary to Defendants argument, Augborne's verified complaint alone overcomes Defendants' claims that "no evidence exists" to establish that Stolk engaged in excessive force and retaliation in this case. Pursuant to Ninth Circuit law, "[a] verified complaint may be treated as an affidavit to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence . . . ." thus satisfying the *Celotex* affidavit requirement. *McElyea v. Babbitt,* 833 F.2d 196, 197-98 (9th Cir. 1986) (quoting *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir. 1985). Here, the court treats Augborne's verified complaint as an affidavit because it is based on personal knowledge and sets forth facts that are admissible at trial through Augborne's own testimony. Therefore,

contrary to Defendants arguments, this evidence alone contains sufficient facts, based on personal knowledge, to create an issue of fact regarding whether the excessive force incident of September 12, 2016 occurred.

Defendants argue the court must ignore the verified statements of fact from the FAC because they are unsubstantiated, uncorroborated, and self-serving. However, the court rejects this argument. Defendants' argument relies solely on *Villiarimo*, 281 F.3d at 106, and *British Airway Bd.*, 585 F.2d at 952 for the proposition that the court may ignore "self-serving and uncorroborated statements" of an opposing party when considering a motion for summary judgment. However, Defendants failed to cite or even acknowledge subsequent Ninth Circuit cases that explain what is meant by "self-serving" testimony.

Indeed, the Ninth Circuit recently clarified that "because a party's own testimony will nearly always be 'self-serving,' the mere self-serving nature of testimony permits a court to discount that testimony where it 'states only conclusions and not facts that would be admissible evidence.'" *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (quoting *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497–98 (9th Cir. 2015)). Thus, "[t]he district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature.'" *Nigro*, 784 F.3d at 497 (quoting S.E.C. v. Phan, 500 F.3d 895, 909 (9th Cir. 2007)).[4] Therefore, this court may not discount Augborne's sworn, verified FAC as claimed by Defendants simply because the facts and statements therein may be "self-serving." The FAC does not merely state "conclusions." Rather, the FAC is a sworn and verified document, treated the same as an affidavit, that contains specific facts related to the events of September 12, 2016, which would be admissible through

---

[4] Defendants' arguments on these points are particularly troubling under the circumstances. The Ninth Circuit clarified *Villiarimo* in *Manley*, a case argued by the Nevada Attorney General's Office, in defense of employees of the NDOC, regarding an excessive force and retaliation incident that took place at ESP – the same institution involved in this case. *See Manley*, 847 F.3d at 711 (holding that the district court erred in disregarding the self-serving and uncorroborated testimony of a prison inmate who was allegedly under the influence of methamphetamine at the time of the events). The failure to acknowledge the clarification of *Villiarimo* in *Manley*, a case with facts and legal issues substantially similar to Augborne's, and to which their office was a party, is unacceptable.

Augborne's testimony. Therefore, Defendants' contentions that they are entitled summary judgment because Augborne's declarations are "self-serving" are without merit.

To the extent Defendants argue the court should discount the facts stated in the FAC as "blatantly contradicted by the record," this argument also fails. The court may not engage in '[c]redibility determinations' or 'the weighing of evidence'" at the summary judgment stage, "as those are functions reserved for the jury." *Manley*, 847 F.3d at 711 (quoting *Anderson*, 477 U.S. at 255).

Therefore, Defendants have failed to meet their initial burden on summary judgment establishing that there was no evidence in the record that the events on September 12, 2016 occurred based on the FAC. On this basis alone, Defendants' motion should be denied as to Count I.

However, even if the court were to assume Defendants met their initial burden on summary judgment, Defendants' motion on Count I must still be denied. This is so because in opposition, Augborne came forward with sufficient evidence to establish genuine issues of fact related to the claims in Count I. Specifically, in addition to the FAC, Augborne has provided sufficient evidence to corroborate his allegations which include Emanuel's affidavit, Augborne's medical kite, and Augborne's multiple, escalating grievances.

First, Augborne produced a sworn affidavit from an eyewitness Emanuel, which provides admissible evidence related to the events of September 12, 2016. (ECF No. 62 at 4, 10.) For example, Emanuel's affidavit corroborates Augborne's allegations that Stolk physically removed Augborne from the intake group shortly after Emanuel and Augborne's arrival at ESP. Emanuel further states in the affidavit that Stolk was aggressive, confrontational, and violent, evidencing a mental state relevant to Augborne's allegations against Stolk on the same day and at nearly the same time the incident allegedly occurred. Finally, Emanuel stated that he saw Augborne later that same day with visible facial bruising. A reasonable juror could find that Emanuel's eyewitness testimony, taken together with Augborne's allegations, establish the facial bruising was

caused by Stolk during the excessive force incident on September 12, 2016 occurred claimed by Augborne.[5]

Next, Augborne points to a medical kite he submitted to further corroborate his statements and as additional evidence to support issues of fact related to this claim. (*See* ECF No. 62 at 5-6, 9.) This medical kite, dated November 18, 2016, requested "Mental Health." (*Id.* at 9.) Augborne claimed that "My head herts (sic) and I wake up fighting in my sleep from being attacked and in fights. And my head shakes uncontrollably I need to talk to someone." (*Id.*) NDOC responded on November 21, 2016 that a staff member would "stop bye (sic) cell front." (*Id.*) Defendants' argue the medical kite does not corroborate Augborne's claims because it only requests mental health treatment. This argument is unpersuasive.[6] Augborne dated his request for mental health treatment November 18, 2016, over two months after the alleged beating occurred. Both the physical pain and facial bruising resulting from the beating described by Augborne would have largely subsided by the time Augborne sought mental health treatment as a result of "being attacked." Drawing all inferences in favor of Augborne, as required at this stage of the litigation, a reasonable jury could conclude the mental health issues resulted, in part, from "being attacked" during the alleged beating by Stolk.

Finally, Augborne points to his grievances regarding the incident, as well as the IG

---

[5] Defendants' assertion that Augborne's claims remain "self-serving and unsubstantiated" despite Emanuel's affidavit is unsupported as Emanuel is a third-party, percipient witness.

[6] The court similarly finds Defendants' argument that "Augborne's medical records show no instance of him requesting treatment for a chipped tooth, nor any injuries after this alleged assault" unpersuasive. (ECF No. 57 at 7). Defendants argue "the medical, dental, and other records available show absolutely no evidence of injuries consistent with an assault within the timeframe alleged by Augborne." Of course, since Augborne had not requested treatment during that timeframe, no such records could exist. Further, Augborne alleges that Stolk beat Augborne specifically to chill Augborne's First Amendment right to file a grievance. (ECF No. 20 at 3-5; ECF No. 62 at 2-3.) A reasonable jury could find that Augborne would be unlikely to pursue procedural remedies directly after being beaten for attempting to pursue the procedural remedy of filing a grievance. Thus, the lack of corroborating documentation regarding the beating is consistent with Augborne's allegations and cuts in favor of Augborne rather than Defendants at this stage.

1  Office investigation as evidence to corroborate his claims and meet his burden to
2  establish there are material issues of fact which preclude summary judgment. (ECF No.
3  62 at 2-3.) Specifically, on November 22, 2016, Augborne filed an informal grievance
4  alleging that Stolk had beaten Augborne on September 12, 2016 causing him to chip his
5  tooth. (ECF No. 57-2 at 9-12.) Augborne repeated these assertions in his first and
6  second level grievances as well. (*Id.* at 4-5.)

   Therefore, based on the evidence before the court, and in viewing all facts and drawing all inferences in the light most favorable to Augborne, there is sufficient evidence that a reasonable juror could find the excessive force and retaliation incident on September 12, 2016 did occur. Thus, Defendants' motion for summary should be denied to the extent it relates to Count I.[7]

   **B.   Count III – Supervisory Liability Claim**

   Next, Defendants seek summary judgment on Count III which alleges supervisory liability against Defendant Dzurenda related to Stolk's conduct. (ECF No. 57 at 9-10.) Supervisory "[l]iability under [42 U.S.C. §] 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007). Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior. *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001). Thus, when a named defendant holds a supervisory position, the causal link between that defendant and the claimed constitutional violation must be established. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). To prevail on a theory of supervisory

---

[7] Defendants' remaining arguments regarding the sufficiency of the evidence Augborne provided in his opposition are unavailing. These arguments relate only to the weight of Augborne's evidence despite Defendants' repeated contentions that Augborne has provided no evidence. Defendants simply beg the court to discount the credibility of Augborne's evidence, a function reserved for juries. *See Fuller v. Idaho Dept. of Corrections*, 865 F.3d 1154, 1165 (9th Cir. 2017) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge . . . .") (quoting *Anderson*, 477 U.S. at 255).

liability, the plaintiff must establish that the defendant either: "personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* (internal quotations omitted).

In Defendants' motion for summary judgment, Defendants argue there is no evidence the September 12, 2016 incident between Augborne and Stolk occurred; of any personal participation by Defendant Dzurenda in any deprivation of Augborne's constitutional rights; that Dzurenda knew or should have known of any such deprivation; or, of any deficient policy implemented by Dzurenda that resulted in any deprivation of Augborne's constitutional rights. (ECF No. 57 at 9-10).

In his opposition, Augborne alleges a "pattern and practice" of inmates being assaulted upon their arrival at ESP. (ECF No. 62 at 6-7.) Augborne further asserts discovery disputes prevented him from obtaining necessary documentation from the "AG's office." *(Id.* at 6.) Augborne alleges a history of inmates who had confrontations with ESP staff being assaulted shortly after arriving at ESP from other institutions. (*Id.* at 7.)

Based on the evidence before the court, and in viewing all facts and drawing all inferences in the light most favorable to Augborne, the court finds that summary judgment on Count III should be granted. Assuming that the September 12, 2016 events occurred, Augborne has presented no evidence that Defendant Dzurenda personally participated in the any alleged constitutional deprivation suffered by Augborne. *Taylor*, 880 F.2d at 1045. Further, Augborne has presented no evidence that Dzurenda knew or should have known that Augborne suffered any alleged deprivation. Finally, Augborne has presented no evidence that Dzurenda "promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force" of Augborne's

alleged deprivation.[8] *Hansen*, 885 F.2d at 646. Augborne is unable to establish the requisite causal connection between Dzurenda and the alleged beating of and retaliation against Augborne by Stolk. *Id.*

Accordingly, the court recommends that Defendants' motion for summary judgment (ECF No. 57) be granted as it relates to Count III.

### C. Qualified Immunity

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988–89 (9th Cir. 2014) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The court may

---

[8] Augborne had an opportunity to collect evidence to support his supervisory liability claim during discovery. (*See* ECF No. 55, setting the extended discovery deadline at January 27, 2020); (*see also* n. 2.) Augborne claims he encountered some discovery difficulties. (ECF No. 62 at 6.) Moreover, Augborne dismissed claims against multiple defendants, the pursuit of which would likely have bolstered evidentiary support for his supervisory liability claim. (*See* n. 2.) In light of the current evidence supporting Augborne's supervisory liability claim, his evidence fails to raise a genuine issue of material fact.

analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240–42.

"[J]udges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "[W]hether a constitutional right was violated . . . is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). While the court decides as a matter of law the "clearly established" prong of the qualified immunity analysis, only the jury can decide the disputed factual issues. *See Morales v. Fry*, 873 F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cty. Of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018). While the court finds genuine issues of material fact exists as to whether Augborne's constitutional rights were violated, the court will address the "clearly established" prong at this time.

Defendants contend that they are entitled to qualified immunity because Augborne's allegations, if true, fail to identify any clearly established right violated by Stolk. (ECF No. 57 at 10-12.) These assertions are demonstratively false.

### 1.    Excessive Force Claim

The case law from both the United States Supreme Court and the Ninth Circuit, in cases nearly identical to the case at bar, have long established that it would be a violation of the Eighth Amendment to beat a prisoner without justification or any good faith belief in the necessity of the force applied. First, the Supreme Court has long held that the Eighth Amendment's proscription on cruel and unusual punishment forbids prison officials from causing "the unnecessary and wanton infliction of pain . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Encompassed within the Eighth Amendment is a bar on the use of excessive force against prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992).

In *Hudson*, a prison inmate alleged that he suffered minor bruises and facial swelling, loose teeth, and a cracked dental plate as a result of being beaten while bound and shackled by two prison guards for arguing with one of those guards. 503 U.S. at 1.

1  The court held that excessive force against a prisoner may violate the Eighth
2  Amendment's prohibition against cruel and unusual punishment despite a lack of serious
3  injury. *Id.* The court stated that the "core judicial inquiry" is "whether the force was applied
4  in a good-faith effort to restore discipline, or maliciously and sadistically to cause harm."
5  *Id.* at 1-2 (citing *Whitley*, 475 U.S. at 320-21). In *Wilkins,* the U.S. Supreme Court found
6  a potential Eight Amendment violation where a prison inmate alleged that a correctional
7  officer, angered by the inmate's request for a grievance form, violently beat the inmate,
8  resulting in physical injuries and mental and emotional trauma, including nightmares. *See*
9  *Wilkins v. Gaddy*, 559 U.S. 34, 35 (2010).

10  The Ninth Circuit has held that the violation described in *Hudson* has been clearly
11  established law in this circuit since at least 1992 and that the violation described in *Wilkins*
12  has been clearly established since at least 2010. *See* 503 U.S. at 1 and 559 U.S. at 37,
13  respectively. *See Hoard v. Hartman*, 904 F.3d 780, 787-90 (9th Cir. 2018) (discussing the
14  history of the legal standard in the Ninth Circuit for Eighth Amendment excessive force
15  claims by inmates). These cases, which are based on facts strikingly similar to the events
16  in this case, alone clearly establish that the use of excessive force against an inmate,
17  without justification or necessity, or precipitated by requesting a grievance form, would
18  be unconstitutional.

19  In support of Defendant's argument that they are entitled to qualified immunity,
20  Defendants actually cite to *Hudson* and *Wilkins*. However, Defendants fail to explain that
21  the facts of these cases are almost identical to Augborne's allegations against Stolk. *See*
22  503 U.S. at 1; 559 U.S. at 35. Plainly, if a correctional officer may not beat an inmate
23  simply because the inmate was arguing with that officer nor can a correctional officer beat
24  an inmate simply for requesting a grievance. *Id.*; *see also Wilkins*, 559 U.S. at 35. That
25  is precisely what Augborne has alleged here – that he was beaten for requesting a
26  grievance and that the mental and emotional effects of the beating eventually resulted in
27  nightmares.

28

1        Moreover, there is clearly established law directly from the Ninth Circuit that establishes that a prison official must not take actions that constitute use of excessive force where the official could not plausibly have thought such actions were necessary. *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (citing *Whitley*, 475 U.S. at 321). In *McRorie*, the Ninth Circuit has clearly established that inmates are protected from wanton beatings that exceed correctional officers' good-faith efforts to address violations of prison rules. *See McRorie*, 795 F.2d at 784 (correctional officers' use of force must be a good faith effort to maintain or restore discipline). Unjustified infliction of bodily harm on an inmate violates the Eighth Amendment when it "evince[s] such wantonness with respect to the unjustified infliction of harm as is tantamount to a known willingness that it occur." *Whitley*, 475 U.S. at 321. In other words, an Eighth Amendment violation occurs where "the guard deliberately used excessive force under circumstances when he knew or should have known that it was an unnecessary and wanton infliction of pain." *McRorie*, 795 F.2d at 784.

Assuming the truth of Augborne's allegations, any reasonable prison official in Stolk's position either would know, or should know, that the actions Stolk took violated the Eighth Amendment. Thus, Stolk knew or should have known that he could not beat Augborne simply because Augborne requested a grievance. *See Wilkins*, 559 U.S. at 35. Further, Stolk knew or should have known that his actions could not plausibly have been necessary. *McRorie*, 795 F.2d at 784.

Accordingly, the court finds that the constitutional right is clearly established, and Defendant Stolk is not entitled to qualified immunity regarding Augborne's Eighth Amendment excessive force claim.

### 2.    Retaliation Claim

Contrary to Defendants' arguments, it is also well-settled in the Ninth Circuit that prisoners have a general right to be free from retaliatory punishment. *Shepard v. Quillen*, 840 F.3d 686, 693 (9th Cir. 2016) (citing *Rhodes v. Robinson*, 408 F.3d 559, 569 (9th Cir. 2005)). "In 1995, [the Ninth Circuit] held that our law regarding retaliation against inmates

16

was clearly established for qualified immunity purposes . . . and we do so again here." *Vance v. Barrett*, 345 F.3d 1083, 1094 (9th Cir. 2003) (citing *Schroeder*, 55 F.3d at 461); *see also Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (citing *Schroeder* for the proposition that a general prohibition against retaliatory punishment is "'clearly established law' for qualified immunity purposes."). Moreover, it is clearly established in the Ninth Circuit that prisoners may seek redress for retaliatory conduct by prison officials under § 1983.[9] *Rhodes*, 408 F.3d at 567; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

Indeed, the Ninth Circuit has stated that "the mere *threat* of harm" may be enough to amount to a violation, "regardless of whether it is carried out because the threat itself can have a chilling effect." *Brodheim*, 584 F.3d at 1269 (emphasis in original). "'[A] threat of retaliation is sufficient injury if made in retaliation for an inmate's use of prison grievance procedures.'" *Id.* (quoting *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994) (alteration in original)). "'[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights.'" *Id.* (quoting *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001)).

Defendants maintain that they are entitled to qualified immunity because there is no clearly established law that an officer beating an inmate in retaliation for requesting a grievance is violative of that inmate's constitutional rights. In their papers, Defendants cite to *Brodheim*, but fail to acknowledge that *Brodheim* clearly established that a "mere *threat* of harm" may be enough to demonstrate retaliation. *See* 584 F.3d at 1269. Of course, if a correctional officer may not threaten to beat an inmate for using prison

---

[9] There is "'no logical distinction between actually filing a [grievance], which is clearly protected, and threatening to file a [grievance]'" in the prisoner retaliation context. *Entler v. Gregoire*, 872 F.3d 1031, 1042 (9th Cir. 2017) (quoting *Gifford v. Atkinson, Topeka, and Santa Fe Ry. Co.*, 685 F.2d 1149, 1156 n. 3 (9th Cir. 1982)).

17

grievance procedures, a correctional officer certainly may not, in fact, beat an inmate for using prison grievance procedures, as is alleged here. *Id.* Moreover, clearly established law generally forbids retaliatory punishment. *Vance*, 345 F.3d at 1094.

Assuming the truth of Augborne's allegations, any reasonable prison official in Stolk's position would know, or should know that the actions Stolk took violated the First Amendment. Since Stolk knew, or should have known, that he could not threaten to beat Augborne for requesting a grievance, Stolk clearly knew, or should have known, that he could not beat Augborne for requesting a grievance, or in any other way retaliate against Augborne for engaging in protected conduct. *See Brodheim*, 584 F.3d at 1269; *see also Schroeder*, 55 F.3d at 461.

Accordingly, the court finds that the constitutional rights at issue here have are clearly established, and Defendant Stolk is not entitled to qualified immunity regarding Augborne's First Amendment retaliation claim.

## IV. CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends that Defendants' motion for summary judgment (ECF No. 57) be granted, in part, and denied, in part.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary

judgment (ECF No. 57) be **GRANTED**, in part, and **DENIED**, in part as follows;

    **IT IS RECOMMENDED** that the Eighth Amendment and conspiracy claims against John Does one (1) through ten (10) be **DISMISSED**;

    **IT IS RECOMMENDED** that the Fourteenth Amendment and supervisory liability claims against John Doe AWO be **DISMISSED**;

    **IT IS RECOMMENDED** that summary judgment as to the Count I excessive force and retaliation claims be **DENIED**;

    **IT IS RECOMMENDED** that summary judgment as to Count III supervisory liability claim be **GRANTED**; and,

    **IT IS RECOMMENDED** that Defendant Dzurenda be **DISMISSED** from this action.

**DATED**: June 16, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**